IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | |
|---|---|
| MARISSA GROSS D/B/A DOWN CREEK GALLERIES, RHONDA G. DERRING, ROBERT D. CASE, and on behalf of all others similarly situated,<br><br>PLAINTIFFS,<br><br>vs.<br><br>PCL CONSTRUCTION SERVICES, INC.<br><br>DEFENDANT. | Case No. 4:17-cv-102<br><br>**CLASS ACTION COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiffs, Rhonda G. Derring, Robert D. Case, Marissa Gross d/b/a Down Creek Galleries, by and through their undersigned counsel, on behalf of themselves and all other persons and entities similarly situated, allege:

**PARTIES**

1. Plaintiff, Rhonda G. Derring ("Derring"), is an owner of real property located at 39237 Sandfiddler Lane, Avon, North Carolina which is used as a vacation rental.

2. Plaintiff, Robert D. Case ("Case"), is an owner of real property at 25222 Sea Isle Shore Ln, Waves, North Carolina which is used as a vacation rental.

3. Plaintiff, Marissa Gross d/b/a Down Creek Galleries ("Down Creek Galleries"), is an owner of an art gallery located at 260 Irvin Garrish Highway, Ocracoke, North Carolina. Down Creek Galleries relies primarily on tourists to provide its business with income.

4. PCL Construction Services, Inc. ("PCL" or "Defendant") is a corporation organized and existing under the laws of the state of Colorado with a principal place of business

at 2000 South Colorado Blvd, Tower Two, Suite 2-500, Denver, Colorado 80222. PCL is licensed to do business in North Carolina, and maintains minimum contacts with the State of North Carolina to satisfy the due process clause of the United States Constitution.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and cost, and because PCL is a citizen of another State.

6. Jurisdiction exists before this Court pursuant to Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime jurisdiction."

7. The claims presented herein are admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Plaintiffs hereby designate this case as an admiralty or maritime case pursuant to Rule 9(h).

8. Jurisdiction also exists over this class action pursuant to The Admiralty Extension Act, 46 U.S.C. § 30101, which extends the admiralty and maritime jurisdiction of the United States to cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land.

9. Prosecution and venue of this class action in this district is proper under 28 U.S.C. § 1391 because PCL does business herein, many Plaintiffs and Class Members reside and do business herein, and the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL ALLEGATIONS

10. In July, 2011, the N.C. Department of Transportation ("NCDOT") awarded a design-build contract to PCL with HDR Engineering, Inc. of the Carolinas ("HDR") as the lead design firm for the Bonner Bridge Replacement Project ("the Bonner Bridge Project").

11. Design-build allows NCDOT to hire a team of designers and builders under one contract which reduces the overall design and construction time from what it would have been had the project been fully designed and then a contractor hired to build the project.

12. The actual construction began on the Bonner Bridge Project on March 8, 2016 with preliminary work beginning in February 2016, and it is expected to be open to the public in November 2018.

13. The total length of the Bonner Bridge Project is 3.5 miles with 2.5 miles of it over navigable water ways.

14. The total cost of the Bonner Bridge Project is $246 million.

15. The Bonner Bridge Project is the first bridge in North Carolina to use stainless reinforcing steel that is supposed to provide protection against corrosion from salt water penetrating into key concrete components of the bridge.

16. The Bonner Bridge Project's pilings (foundation) were to be driven deeper into the inlet floor, to prevent issues with scour (sand washing away from around the piles).

17. On July 27, 2017, at 4:30 am, PCL drove a steel piling through the underground power cable between the southern end of Bonner Bridge and the first riser pole on Hatteras Island causing all power to go out ("the Power Outage") on Ocracoke and Hatteras Islands.

18. The underground cable or excavation equipment was located on or in navigable waterway.

19. On July 27, 2017 at 5:00 pm, due to the Power Outage affecting Ocracoke Island, Hyde County issued a mandatory evacuation of all non-residents.

20. On July 27, 2017, the Governor of North Carolina declared a state of emergency for Ocracoke and Hatteras Islands.

21. On July 29, 2017, due to life safety issues from the loss of reliable electrical power on Hatteras Island and growing uncertainty as to when repairs to the transmission lines will be completed to enable restoration of full power, Dare County North Carolina issued a mandatory evacuation for all non-residents to Hatteras Island, effective at 6 a.m. The mandatory evacuation included the villages of Rodanthe, Waves, Salvo, Avon, Buxton, Frisco and Hatteras, North Carolina (collectively "Hatteras Island").

22. Accordingly, as of July 29, 2017 at 6 am, all non-residents have been evacuated from Hatteras and Ocracoke Islands.

23. As of the time of this filing, it has been determined that two transmissions lines have been severed and, at least one of the transmission lines is missing a two foot section. There are estimates that it will likely be one to two weeks before the transmission is repaired and power is restored.

24. Due to the mandatory evacuations, the Power Outage, and the uncertainty of when the repairs will be completed to restore the electrical transmission lines, Plaintiffs and all others similarly have been devastated because of lost rentals, tourist and business income during the peak tourist season for Ocracoke and Hatteras Islands. Further, tourists and vacationers have

4

canceled plans to travel to Ocracoke and Hatteras Islands through the rest of the tourist seasons due to the uncertainty of the repairs to the transmission lines.

25. Accordingly, this Class Action Complaint is filed on behalf of those persons (individuals and entities) seeking private (non-governmental) economic loss and property damages.

26. This Complaint asserts claims under federal maritime law, including federal common law and federal statutory law, seeking damages for the Class defined in the Class Allegations section of this Complaint, including actual, compensatory, and punitive damages, arising from the steel piling causing the Power Outage on Hatteras and Ocracoke Island.

27. PCL could have prevented this catastrophe by using proper risk management practices, following industry standards, following required safety protocols and precautionary procedures, and properly maintaining equipment. However, PCL chose to violate or ignore operational discipline, and to save money and time at the expense of safety. Their cost-cutting measures were taken with willful, wanton, and reckless indifference to the economic interests, businesses, and property of Plaintiffs and Class Members described herein.

28. PCL made decisions impacting the safety of the health, welfare, and value of the people, businesses, and property of the Plaintiffs and class members in the direction of short-term gain, through reduced schedule and reduced cost, rejecting adequate and responsible risk-analysis checks and balances to weigh cost and time versus risk and safety. The result was both predictable in outcome and unprecedented in scale.

29. Moreover, because their conduct endangered the health and safety of a large region and population, caused and increased the risk of serious injury and bodily harm, and

affected a financially vulnerable population dependent on tourism and vacationers during this time of year, the degree of reprehensibility of PCL's conduct is at the highest level.

30. The Power Outage has caused, and continues to cause, devastating economic damage. For example, businesses have lost and continue to lose income; the tourism industry and hotels, resorts, restaurants, commercial fisherman, rental owners and other tourism-reliant businesses have lost and continue to lose income; and property owners have suffered the loss, damage, and/or diminution of the value of their properties throughout the Hatteras and Ocracoke Islands.

31. Plaintiffs, Derring, Case and Down Creek Galleries, have suffered economic injury, damage, and/or losses as a result of the Power Outage. This is peak season for tourists and renters on Hatteras and Ocracoke Islands. Due to the Power Outage, Plaintiffs and Class Members' rentals have been canceled. Further, Down Creek Galleries has lost income that it was expecting during a robust time of year and season.

## CLASS ACTION ALLEGATIONS

**A.  Class Definitions and Exclusions**

32.  Plaintiffs seek certification of the following Classes:

**Area Business Class:**

All persons who own a business on Ocracoke or Hatteras that lost income due to the Power Outage.

**Rental Class:**

All persons who own real property on Ocracoke or Hatteras Island who lost rental income due to the Power Outage.

33.  Excluded from the Classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) PCL and any entity in which PCL have a controlling

6

interest or which has a controlling interest in PCL and their legal representatives, assigns and successors of PCL; and (c) all persons who properly execute and file a timely request for exclusion from the Classes or are currently in litigation with PCL.

### A. Numerosity of the Class/Impracticability of Joinder — F.R.C.P. 23(a)(1)

34. The Classes consists of tens of thousands of individuals and businesses that have been economically damaged by the Power Outage, making joinder impracticable. Class members can be informed of the pendency of this action by print, Internet, and broadcast notice.

### B. Commonality — F.R.C.P. 23(a)(2).

35. Common questions of law and fact exist as to all members of the Classes. Because PCL's behavior here is governed by federal regulations, and federal maritime law, the Class members will be subject to common questions of law.

36. Furthermore, the factual bases of PCL's conduct are common to all Class members and represent a common thread of reckless conduct and decisions, gross negligence and willful, wanton, and reckless indifference for the rights of others, resulting in injury to all members of the Class. Each Class member's claim arises from the same course of planning, decisions, and events, and each Class member will make similar legal and factual arguments to prove PCL' outrageous, willful, reckless, wanton, and deplorable conduct and liability.

37. PCL's conduct presents a series of significant factual questions with common answers, including:

    a. Whether PCL negligently, outrageously, willfully, wantonly, and/or recklessly caused and/or contributed to the Power Outage;

    b. Whether PCL knew or should have known of the risk of a Power Outage; and

c. Whether PCL's conduct in failing to utilize all available drilling best practices and drilling vessel safety mechanisms to prevent the Power Outage was outrageous, grossly negligent, willful, wanton, or reckless.

38. Common questions of fact also exist with respect to the punitive damages liability of PCL to the Class, including PCL's outrageous, grossly negligent, willful, reckless, and wanton conduct; the calculation of the amount of punitive damages that may be imposed upon each of the PCL consistent with due process; intra-class equity with respect to the allocation and utilization of punitive damages; and the most practicable and most equitable allocation, disbursement, and utilization of such damages for punishment of PCL' wrongful conduct toward Plaintiffs, the Classes, and society, and in fulfillment of the deterrent policy and purpose of punitive damages.

### C. Typicality — F.R.C.P. 23(a)(3)

39. The claims in this Class Action Complaint are typical of the claims of the Classes in that they represent the various types of non-governmental economic losses and property damage caused by the Power Outage. Each Class member's claim arises from the same course of planning, decisions, and events, and each Class member will make similar legal and factual arguments to prove PCL's outrageous, grossly negligent, willful, reckless, and wanton conduct and liability.

### E. Adequacy of Representation — F.R.C.P. 23(a)(4)

40. Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience in prosecuting mass tort and complex class actions, including construction defects which have lead to the Power Outages. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the

8

Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

### D. Class Certification under F.R.C.P. 23(b)(3) — Predominance and Superiority

41. The common issues of fact and law presented in this action, including those specified above, predominate with respect to the claims of the Classes over any questions affecting only individual Class members. Fundamentally, all Plaintiffs' claims arise out of a single course of conduct by PCL that caused the Power Outage. Although this is a single event, single location mass disaster that has affected, and will continue to affect many individuals and businesses, its wide-ranging effects can be traced back to one single root: a chain of decisions and actions made jointly and severally by a small group of actors. Plaintiffs will present common proof with respect to PCL's failure to use drilling best practices or take adequate safety precautions in the construction of the Bonner Bridge Project — proof that is the same for each member of the Class.

42. Plaintiffs' proof of PCL's outrageous, grossly negligent, willful, reckless, and wanton conduct will involve the same cast of characters, events, discovery, documents, fact witnesses, and experts. Common questions of fact also predominate concerning the determination of the aggregate quantum of punitive damages, necessary to fulfill the punishment and deterrence goals of such damages.

43. Because PCL's behavior here is governed by federal regulations, and federal maritime law, the Class members will be subject to common questions of law.

44. A class action is superior to the only other method available for the adjudication of PCL' outrageous, grossly negligent, willful, reckless, and wanton conduct — individual litigation and multiple trials. The repetitive individual litigation of PCL's conduct by all

members of the Classes is inefficient, impracticable, economically infeasible, and potentially unfair, particularly in light of the unique context of PCL's course of conduct and its unprecedented impact upon the Classes, the economy, and society.

45. It would be unduly burdensome on the courts to undergo the individual re-litigation of the same facts and legal issues in thousands of cases. The consideration of common questions of fact and law via this class action will conserve judicial resources and promote a fair and consistent resolution of these claims.

## CLAIM I
## NEGLIGENCE

46. Plaintiffs reallege each and every allegation set forth in all preceding paragraphs as if fully restated here, in the claim for negligence under federal common law.

47. At all times material hereto, PCL were participating in drilling operations on a vessel over navigable water for the Bonner Bridge Project.

48. At all times material hereto, PCL owed and breached duties of ordinary and reasonable care to Plaintiffs in connection with the drilling operations of the Bonner Bridge Project and the maintenance of the vessel, its appurtenances and equipment, and additionally owed and breached duties to Plaintiffs to guard against and/or prevent the risk of a Power Outage.

49. The existence and breach of these legal duties are established under the general maritime law and state law as deemed applicable herein.

50. Plaintiffs, as owners, lessors, lessees, and/or operators of real property at or near the Bonner Bridge Project on Ocracoke or Hatteras Islands and/or businesses or employees of businesses that are dependent upon the tourism to Ocracoke and Hatteras Islands for their livelihood and income, were within an appreciable zone of risk and, as such, were obligated to protect them.

51. PCL knew of the dangers associated with drilling pilings and failed to take appropriate measures to prevent damage to Plaintiffs' and the Classes' businesses and rental properties.

52. PCL was under a duty to exercise reasonable care while participating in drilling and pile driving operations on the Bonner Bridge Project to ensure that it did not sever transmission cables as a result of such operations.

53. PCL was under a duty to exercise reasonable care to ensure that it not sever transmission cables or take precautions to ensure that no cables were severed in the process.

54. PCL knew or should have known that the acts and omissions described herein could result in damage to Plaintiffs and the Classes.

55. PCL failed to exercise reasonable care while participating in drilling and pile driving operations to ensure that they did not sever transmission cables and thereby breached duties owed to Plaintiffs and the Classes.

56. PCL failed to exercise reasonable care to ensure that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects of severing transmission cables, and thereby breached duties owed to Plaintiffs and the Classes.

57. The conduct of PCL with regard to the operation of drilling and pile driving operations such as the Bonner Bridge Project and its appurtenances and equipment is governed by numerous state and federal laws and permits issued under the authority of these laws. These laws and permits create statutory standards that are intended to protect and benefit Plaintiffs and the Classes. PCL violated these statutory standards.

58. PCL violated the following regulations:

11

a. PCL failed to protect health, safety, property, and the environment by failing to perform all operations in a safe and workmanlike manner;
   b. PCL did not take measures to prevent severing of underground and underwater transmission cables; and
   c. PCL failed to follow North Carolina Building Codes, the plans and specifications, and industry standards in construction of the Bonner Bridge Project.

59. The violations of these statutory standards constitute negligence *per se* under federal law, as well as North Carolina law.

60. In addition to the foregoing acts of negligence, Plaintiffs aver that the Power Outage was caused by the joint, several, and solidary negligence and fault of following non-exclusive particulars:

   a. Failing to follow safety statutes for the Bonner Bridge Project;
   b. Failing to properly review the plans and specifications for the Bonner Bridge Project to assure that they did not drill or drive pilings into underground or underwater transmission cables;
   c. Acting in a careless and negligent manner without due regard for the safety of others;
   d. Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Bonner Bridge Project which, if they had been so promulgated, implemented and enforced, would have averted the Power Outage;
   e. Negligently hiring, retaining and/or training personnel;
   f. Failing to take appropriate action to avoid or mitigate the Power Outage;
   g. Negligently implementing or failing to implement policies and procedures to safely construct the Bonner Bridge Project;
   h. Failing to warn in a timely manner;
   i. Failing to timely bring the Power Outage under control;
   j. Failing to provide appropriate accident prevention equipment; and
   k. Such other acts of negligence and omissions as will be shown at the trial of this matter; all of which acts are in violation of the general maritime law.

61. Plaintiffs are entitled to a judgment finding PCL liable, and solitarily, to Plaintiffs for economic and property damages suffered as a result of PCL's negligence and awarding Plaintiffs adequate compensation therefor in amounts determined by the trier of fact.

12

62. The injuries to Plaintiffs and the Classes were also caused by and/or aggravated by the fact that PCL failed to take necessary actions to mitigate the danger associated with its operations.

63. As a direct and proximate result of PCL's negligence, Plaintiffs and the Classes have suffered a loss of rental and business income, loss of the use of the Ocracoke and Hatteras Islands for commercial and tourism purposes, and damages associated and inconvenience sustained by the mandatory evacuations, including loss of their livelihood.

## CLAIM II
## GROSS NEGLIGENCE AND WILLFUL MISCONDUCT

64. Plaintiffs reallege each and every allegation set forth in all preceding paragraphs as if fully restated here, in this claim for relief for gross negligence and willful misconduct under federal common law.

65. PCL owed and breached duties of ordinary and reasonable care to Plaintiffs in connection with the construction of, drilling operation on, the Bonner Bridge Project, and additionally owed and breached duties to Plaintiffs and the Classes to guard against and/or prevent the risk of the Power Outage. The existence and breach of these legal duties are established under the general maritime law and state law as deemed applicable herein.

66. PCL breached its legal duty to Plaintiffs and failed to exercise reasonable care and acted with reckless, willful, and wanton disregard in the negligent construction of the Bonner Bridge Project.

67. PCL knew or should have known that its wanton, willful, and reckless misconduct would result in a disastrous and devastating Power Outage that would endanger the life and safety of the residents and visitors of Hatteras and Ocracoke Islands causing damage to those affected by the Power Outage.

68. PCL acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiffs and the Classes by, *inter alia*, disregarding proper drilling and pile driving procedures; failing to ensure that that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects the Power Outage for Ocracoke and Hatteras Islands.

69. PCL acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiffs by, *inter alia*, recklessly maintaining and altering, and/or wantonly operating and/or using the BOP appurtenant to the Bonner Bridge Project.

70. As a direct and proximate result of PCL's gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiffs, Plaintiffs and Classes have suffered a loss of rental and business income, loss of the use of the Ocracoke and Hatteras Islands for commercial and tourism purposes, and damages associated and inconvenience sustained by the mandatory evacuations, including loss of their livelihood.

## CLAIM III
## NUISANCE

71. Plaintiffs reallege each and every allegation set forth in all preceding paragraphs as if fully restated here.

72. At all times material hereto, Plaintiffs and Class Members were owners, lessors, or lessees of residential, commercial, and/or investment properties on either Ocracoke or Hatteras Islands.

73. PCL's negligence caused and/or contributed to the Power Outage while constructing the Bonner Bridge Project and resulted in an economic disaster that has directly and

14

Case 4:17-cv-00102-D   Document 1   Filed 07/31/17   Page 14 of 18

proximately caused Plaintiffs' and the Classes' interests as business owners, lessors, and/or lessees of properties to be deprived of their use and enjoyment of their properties.

74. PCL were under a duty to take positive action to prevent or abate the negligent action, but failed to do so.

75. The harm suffered by Plaintiffs and the Classes is significant and of a kind that would be suffered by a normal person in the community or by property in normal condition and used for normal purpose.

76. PCL acted in an unreasonable manner in creating the nuisance described herein.

77. The Bonner Bridge Project Incident that PCL caused the Power Outage of Hatteras and Ocracoke Islands constitutes a nuisance that has caused and will continue to cause injury to Plaintiffs, including, but not limited to, damages to and diminution in the value of their properties and the surrounding environments caused by the Power Outage due to the Bonner Bridge Project.

78. PCL is liable to Plaintiffs and the Classes for actual and compensatory damages sustained as the direct and proximate result of the nuisance alleged herein.

## CLAIM IV
## TORTIOUS INTERFERENCE

79. Plaintiffs reallege each and every allegation set forth in all preceding paragraphs as if fully restated here.

80. Plaintiffs and the Classes have business relationships whereby they would lease their real property to renters and sell their goods to tourists. These business relationships were memorialized by invoices, receipts, and other documents showing a consistent course of sales.

81. Plaintiffs had a reasonable expectation of economic gain resulting from the relationships with their tenants and tourists. Plaintiffs reasonably expected to continue to lease

their real property to such tenants, and would not be adversely affected by a Power Outage which would cause a mandatory evacuation.

82. PCL knew that Plaintiffs and other business entities on Ocracoke and Hatteras Islands expected these business relationships to continue in the future.

83. PCL interfered with these prospective future business relationships through its conscious decision to fail to ensure it took safety precautions and complied with all industry standards, building codes, and plans and specifications in constructing the Bonner Bridge Project.

84. PCL knew, or should have known, that failing to comply with all industry standards, building codes, and plans and specifications would lead to the Power Outage.

85. PCL failure to follow industry standards, building codes, plans and specifications has destroyed Plaintiffs' and Class Members' business and income capabilities during peak tourist season.

86. Due to the Power Outage, Plaintiffs and others similarly situated are unable to lease their real property.

87. PCL interfered with Plaintiffs' and the Classes business relationships and ability to earn an income; and PCL knew the interference was certain or substantially certain to occur as a result of its conduct constructing the Bonner Bridge Project.

88. Plaintiffs have been proximately damaged and continue to be damaged as a result of PCL' interference.

89. PCL' tortious conduct serves as a direct and proximate cause of the injuries and damages sustained by Plaintiffs and the others similarly situated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in Plaintiffs' favor and against PCL, as follows:

1. awarding Plaintiffs actual damages, including compensatory and consequential damages, in an amount to be determined at trial;

2. awarding Plaintiffs exemplary or punitive damages;

3. awarding Plaintiffs pre-judgment and post-judgment interest;

4. awarding Plaintiffs such costs and disbursements as are incurred in prosecuting this action, including reasonable attorneys' and experts' fees; and,

5. granting Plaintiffs such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for any and all claims pled herein in which a jury trial is available by law.

Respectfully submitted, this the 31st day of July, 2017.

By: */s/ Daniel K. Bryson*
Daniel K. Bryson
N.C. State Bar No. 15781
Scott C. Harris
N.C. State Bar No. 35328
Matthew Lee:
N.C. State Bar No. 35405
**Whitfield Bryson & Mason LLP**
900 West Morgan St.
Raleigh, North Carolina 27603
Telephone: 919-600-5000
Email: dan@wbmllp.com
Email: scott@wbmllp.com
Email: matt@wbmllp.com

Gary E. Mason
(to be admitted pro hac vice)

Whitfield, Bryson & Mason, LLP
5101 Wisconsin Ave., NW
Suite 305
Washington, DC 20016
Telephomne: 202-429-2290
Email: gmason@wbmllp.com